ROSE FIORILLA ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF NORWALK ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued January 3—decided February 19, 1957

*Robert B. Devine,* for the appellants (plaintiffs).

*Leslie N. Davis,* for the appellee (defendant Boots Aircraft Nut Corporation), with whom, on the brief, was *Vincent D. Flaherty,* for the appellee (named defendant).

O'SULLIVAN, J. The issue on this appeal is whether the court was correct in refusing to invalidate the action of the defendant zoning board of appeals in granting to the defendant Boots Aircraft Nut Corporation a variance permitting an extension of a nonconforming use in a residential zone.

The facts are these: The premises in question lie in a residence AA zone. They are located just south of the Merritt Parkway near the easterly town line of Norwalk. Access to the irregularly shaped land is by a narrow entrance from a public highway. Upon the premises stands a stone building in which light industry has been carried on as a nonconforming use since 1929, the year when the Norwalk zoning ordinance was first enacted. In 1945, the board granted a variance authorizing an extension of the nonconforming use by the then operator of the plant. As a result, an addition constructed of cement blocks was erected. In 1948, the premises were sold to another company, and in 1951 Boots Aircraft Nut Corporation, herein to be called Boots, entered into an agreement with that company to buy the property, provided permission to increase the size of the stone and cement-block building could be obtained. Although an application for a variance to attain that objective was denied, Boots bought the property. It also purchased another parcel of land, with a building thereon, in South Norwalk, believing that the two plants could be satisfactorily operated together. This decision proved to be unwise because of the expense and inconvenience in transporting personnel

and material between the two plants. Nevertheless, operations at both were continued until a series of floods, extending over two years, struck the South Norwalk plant, causing damage during one year alone in excess of $100,000. Boots decided that it could not absorb further losses of that nature and closed down the South Norwalk plant.

On January 10, 1956, Boots applied to the board for a variance to permit the construction of an addition to its Norwalk plant. The contemplated addition would double the size of the existing building but is substantially less extensive than the one for which a variance was sought and denied in 1951. In filing the 1956 application, Boots offered to soundproof its manufacturing operations, landscape the property, screen the addition with trees and shrubbery, and tear down a small structure near one of the boundary lines of the property. The board held three public hearings on the application. Every member of the board visited the site in the evening and most of them made several trips in the daytime to examine it. On February 20, 1956, the board granted the application. A group of property owners then took an appeal to the Court of Common Pleas, but their appeal was dismissed. From that judgment they have now appealed to this court.

A preliminary contention advanced by the plaintiffs is that the denial of the 1951 application precluded the board from granting the one submitted in 1956, because, they maintain, no change of conditions had occurred since the prior decision and no other considerations materially affecting the merits of the subject matter had intervened without the vesting of any rights. It is a salutary principle of law that at least one of the two contingencies just stated must ordinarily exist in order to justify an

administrative agency in reversing itself. *Hoffman* v. *Kelly*, 138 Conn. 614, 616, 88 A.2d 382. Otherwise, there would be no finality to the proceeding, and the first decision would be capable of change at the whim of the agency or, worse still, through improper influence exerted on its members. *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, 140 Conn. 527, 533, 102 A.2d 316; *St. Patrick's Church Corporation* v. *Daniels*, 113 Conn. 132, 137, 154 A. 343. The principle applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former. And it is for the administrative agency, in the first instance, to decide whether the requested relief in both applications is substantially the same. Its determination will be disturbed only if its discretion was abused. Anything appearing in *Sipperley* v. *Board of Appeals on Zoning*, 140 Conn. 164, 98 A.2d 907, which seems to run counter to the foregoing observations is overruled. In the case at bar, the variance requested and denied in 1951 was so much more extensive in scope than the one requested in the 1956 application that the board was warranted in entertaining the latter application. In this respect, the board did not abuse its discretion.

The fundamental question, to which we now turn, is whether the court erred in refusing to hold that, in granting the variance, the board acted arbitrarily, illegally or so unreasonably as to have abused its discretion. *West Hartford Methodist Church* v. *Zoning Board of Appeals*, 143 Conn. 263, 266, 121 A.2d 640. The board gave as a reason for its action that "the irregular shape of the plot and the narrow entrance at the public street, and the existing building, make it impractical to use in accordance with existing 'AA' [residential] zoning, and hence un-

necessary hardship exists." What the board had in mind becomes clearer by examining the map of the property. The shape of the land may be likened to that of a meat cleaver. The blade of the cleaver represents the area on which Boots now operates its factory and wishes to erect the proposed new building, while the handle represents a narrow strip of land, over 300 feet long, leading from that area to the public highway. Where it joins the highway, the strip is twenty-five feet wide. The board could reasonably have concluded that the property lacked sufficient frontage on a highway to afford an acceptable access to the interior land and otherwise was ill adapted to residential use, considering, among other things, the presence of an existing nonconforming use. "A hardship resulting from the peculiar topography or condition of the land or a particular location which makes the property unsuitable for the use permitted in the zone in which it lies may well be such a hardship as is contemplated by the ordinance." *Plumb* v. *Board of Zoning Appeals,* 141 Conn. 595, 601, 108 A.2d 899. In view of this principle, we cannot say that the board acted upon an improper reason.

The ordinance further provides that every variance must be in harmony with the general purpose and intent of the regulations, in order that substantial justice may be done. Norwalk Zoning Ordinance, § 17(6)(1929). To justify the action of the board under that provision, it must appear that the variance will not substantially affect the comprehensive plan of zoning in Norwalk, and that adherence to the strict letter of the ordinance will cause Boots to bear a hardship which is unnecessary to the carrying out of the general purpose of the plan. *Rafala* v. *Zoning Board of Appeals,* 135 Conn. 142, 145, 62 A.2d

337; *Stavola* v. *Bulkeley,* 134 Conn. 186, 190, 56 A.2d 645.

The facts readily supply the required justification. The comprehensive plan of zoning in Norwalk is found in the provisions of the regulations themselves. *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173. The ordinance not only includes the customary authority to vary the regulations but extends to nonconforming uses a greater liberality than has previously come to our attention. For example, § 8 of the ordinance provides that, as a matter of right and without resort to the board at all, nonconforming uses existing in 1929 may be continued and any building "designed, arranged, intended for or devoted to a non-conforming use may be reconstructed and structurally altered, and the nonconforming use therein changed" under certain conditions. Furthermore, under § 17 the owner may obtain special exceptions from the board to extend the area of nonconformity.

Because nonconformity and zoning thwart each other, the Norwalk ordinance sets up a system with a weakness. This was the privilege, however, of the local legislative body. It was entitled to enact and retain the ordinance in the adopted form. But the comprehensive plan which is thus made manifest permits the board to exercise greater liberality than would be legally possible under a more rigid plan. For this reason, we are unable to say that the variance in question was not in harmony with the general purpose and intent of the regulations.

There is no error.

In this opinion the other judges concurred.