[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Zoning Board of Appeals of the Town of Stonington ("ZBA") approving three variances for the defendant applicant MGF Development Corporation ("Applicant"), optionee on property owned by the defendant Barres, Kleeman, Barres Properties II, and located on Greenmanville Avenue in Mystic in the Town of Stonington. The plaintiff owns property which adjoins or abuts the property which is the subject of this appeal. The pleadings in the file indicate that an action for foreclosure of a certain mortgage from Barres, Kleeman, Barres properties II (hereinafter "BKB") was brought by the Bank of Boston-Connecticut ("owner"). A judgment of foreclosure dated September 21, 1990 was granted by order of strict foreclosure and the Bank of Boston-Connecticut is now the lawful owner of the subject property.
The subject property is zoned partially Greenbelt Residential (GBR-130) and partly Tourist Commercial (TC-80). It is a 6.29 acre "flag shaped" piece of property which is bordered by Whitehall Landing Condominiums to the north, Interstate 95 to the south, the Ramada Inn to the east, and the Mystic River to the west. The riverfront portion of the property is zoned Greenbelt Residential (GBR-130) and the portion adjacent to the Ramada Inn is zoned Tourist Commercial (TC-80).
The applicant intends to build a 40,000 square foot office building on the property. On June 20, 1989, the applicant submitted a variance application requesting the ZBA CT Page 6928 to reduce the buffer to the Ramada Inn Motel from 50 feet to 10 feet, to reduce the buffer to the GBR-130 zone from 100 feet to 35 feet, to reduce parking requirements, and to reduce the required loading berths from 5 to 2. This was the third application for variances on the property, the previous two applications having been denied. The zoning regulations at issue are section 4.55(B), 4.55(C), 6.6-2 (C-1) and 6.6-3(A), respectively.
A public hearing was held on the application on July 11, 1989. After the hearing, the ZBA decided to approve with stipulations the variances for section 4.55(B) and 4.55(C). The variance for section 6.6-3(A) was also approved. The variance for section 6.6-2 (C-1) was denied. The Board's approval was conditioned upon the Applicant's plan to provide for public access to the Mystic River, the applicant's providing additional screening along Whitehall Property and the permanent protection of the adjacent Greenbelt Zone as a park. Notice of the defendant's decision was published in the New London Day on July 19, 1989.
On August 2, 1989, the plaintiff filed the present appeal, pursuant to Connecticut General Statutes section 8-8, contending that the ZBA acted illegally, arbitrarily and in the abuse of its discretion. The defendant ZBA filed an answer denying that it acted illegally, arbitrarily or in abuse of discretion.
In the brief submitted by the plaintiff, the following argument was addressed:
 (a) The applicant failed to establish the existence of a legal hardship;
 (b) The percentage of the reduction of buildable area is not controlling;
 (c) The variances granted are not in harmony with the general purpose and intent of the regulations;
 (d) Assuming arguenso, the applicant demonstrated a legal hardship to require a variance, the variances requested and granted by the board were in excess of those necessary to alleviate any hardship;
 (e) Approval of the application was an impermissible reversal of the previous CT Page 6929 denial of the requested variances;
 (f) Approval of the variance with the condition that the applicant insure that no water development except a park occur and the park is designated as such in perpetuity constitutes illegal contract zoning.
Since issues not briefed are considered abandoned; see State v. Ramsundar, 204 Conn. 4, 16 (1987); DeMilo v. West Haven, 189 Conn. 671, 681-82 n. 8 (1983); only the above arguments will be addressed in this decision.
The plaintiff alleges statutory aggrievement as an abutting landowner in his appeal. The plaintiff owns a condominium next to the subject property. Therefore, the plaintiff is aggrieved. This appeal was instituted in a timely manner.
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554,572-73 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily or in abuse of its discretion. Raybestos-Manhattan, Inc. v. Planning Zoning Commission, 186 Conn. 466, 470 (1982). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989).
The authority of a Zoning Board of Appeals to grant a variance under General Statutes section 8-6 (3) requires the fulfillment of two conditions: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." Grillo v. Zoning Board of Appeals, 205 Conn. 703, 709 (1988). The hardship must be different in kind from that generally affecting properties in the same zoning district. Kelly v. Zoning Board of Appeals, 21 Conn. App. 594, 598 (1990), citing Smith v. Zoning Board of Appeals, 174 Conn. 323-324 (1978). The granting of a variance must be reserved for unusual or exceptional circumstances; proof of hardship is a condition precedent to granting a variance. Id. However, financial hardship will not suffice to demonstrate a legal hardship as "the financial loss or the potential of financial advantage to the applicant is not the proper basis for a variance." Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 239 (1972). The hardship must arise CT Page 6930 from circumstances and conditions beyond the control of the property owner. Pollard v. Zoning Board of Appeals, 186 Conn. 32,39 (1982), quoting Smith v. Zoning Board of Appeals,174 Conn. at 327.
The plaintiff argues that the applicant failed to establish the existence of a legal hardship. According to the plaintiff, the Stonington Zoning Regulations, section 8.11D require that no permitted use be left to the landowner before a variance may be granted. The plaintiff then proceeds to list all of the "many reasonable permitted uses" that remain available to the applicant in the absence of a variance, such as a 5,000 square foot office building. The plaintiff concludes that since the applicant still has many uses which would be permitted without a variance, it has failed to show the existence of a legal hardship.
However, while an applicant must show that the ordinance in question restricts the use of his land for any reasonable purpose to demonstrate that a confiscation of property has occurred, and that a confiscation can satisfy the requirement that a hardship exists, see Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146, 150-52 (1976), there is no authority cited by the plaintiff for the proposition that an applicant for a variance must demonstrate that a taking will occur unless the variance is granted. Rather, pursuant to Connecticut General Statutes section 8-6 (3), the applicant for a variance must show that enforcement of the ordinance "would result in exceptional difficulty or unusual hardship so that substantial justice will be done" by the granting of the variance.
There is a basis upon which one could determine that there is hardship in this case due to the unique physical characteristics and configuration of the property. Section 4.55C of the regulations provides:
4.55 Buffer Requirements
 A. 50 feet with 25 feet of screening (except in front yard)
 B. 50 feet of screening adjoining motels (except in front yard)
 C. 100 feet adjoining existing residences and residential zone.
It was argued at the public hearing that: CT Page 6931
 . . . the floor area ratio . . . here allows about a fifty thousand square foot building. The problem is that when you layout a fifty thousand square foot building on this 6.2 acres with the parking that goes with it, you don't go into the Green Belt area, but you go into the buffer. You come within 100 feet and . . . it only leaves — if you take that buffer as a whole, it only leaves about 7% of the property developable.
The characteristics of the property at issue are unique, due to the fact that it is surrounded to the north, the west and, in part, the south, by the Greenbelt residential zone, which requires a 100 foot buffer, and the east by a motel, which requires a 50 foot buffer. The imposition of the applicable buffer requirements would leave the applicant with only a small and odd-shaped buildable area. The record supports a conclusion of unusual hardship caused by the application of the regulations to the subject property. See Fiorilla v. Zoning Board of Appeals, 144 Conn. 275, 279-80 (1957) (board's finding that a hardship exists due to the irregular shape of the property upheld); Plumb v. Board of Zoning Appeals, 141 Conn. 595, 601
(1954) ("A hardship resulting from the peculiar topography or condition of the land or a particular location which makes the property unsuitable for the use permitted in the zone in which it lies may well be such a hardship as is contemplated by the ordinance.")
The plaintiff further argues that the hardship in this case results from the voluntary act of the owner, who purchased the property with full notice that the applicable zoning regulations would prohibit the building sought to be constructed. The plaintiff relies on the cases of Spencer v. Zoning Board of Appeals, 15 Conn. App. 387 (1988) and Able v. Zoning Board of Appeals, 172 Conn. 386 (1977) in support of this position. In Spencer, the applicant purchased two adjacent lots with a total area of 12,500 square feet. At the time of the purchase, there was already in existence a residential building which was located partly on both lots. Spencer v. Zoning Board of Appeals, 15 Conn. App. at 388. The applicant later applied for variances waiving the 7,500 square foot area requirement for I each of the proposed lots. Id. at 389. In holding that the trial court had erred in determining that the plaintiff had established an unusual hardship, the court stated:
 (T)he plaintiff purchased the parcel in 1965 with the dwelling situated partly on both lots. There was sufficient notice in the land records at the time she purchased CT Page 6932 the property to alert her to the town's square foot area regulations for residential use, and to the fact that her predecessor in title had built the dwelling on the parcel in such a way as to prevent a second dwelling from being built on the property without violating those regulations. . . . We conclude that the plaintiff voluntarily assumed any hardship when she purchased the parcel.
Id. at 390-91.
Similarly, in Able v. Zoning Board of Appeals,172 Conn. 286 (1977), the purchaser of a .704 acre lot applied for a variance waiving the one-acre area requirement for residential use. The court stated:
 (T)hough the undersized lot was created by a predecessor in title of the applicant, the applicant was fully aware that he was purchasing a lot that was insufficient in size to support a residence under the existing zoning regulations. He was also aware that the lot had specifically been designated as a park reserve and was not to be used for building. He cannot now be heard to complain that the zoning regulations are unjust.
Id. at 290-91.
However, the Spencer and Able cases are distinguishable from the present case, where the hardship arose not from the lot creation itself but from the subsequent enactment of the buffer requirements and the creation of the Greenbelt zone in 1979. The court in Johnny Cake, Inc. v. Zoning Board of Appeals, 180 Conn. 296 stated that "(t)here has always existed a distinction between circumstances such as those in Able, where the applicant or his predecessor in interest creates a hardship such as an undersized lot, and a situation where the hardship which would justify the grant of the variance originates in the zoning ordinance itself." Johnny Cake,180 Conn. at 300. The court continued that "(w)here the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance. . . . But if the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance and, if his request is supported by law, to obtain the variance." Id. at 300-301 (citations CT Page 6933 omitted); see also Stankiewicz v. Zoning Board of Appeals,15 Conn. App. 729, 733 (1988) (Trial court correctly concluded that because the property existed in its present configuration prior to the enactment of the zoning regulations, the present hardship, resulting from the nonconformity of the lot, was not attributable to the present owners or their predecessors in title.)
Since the present hardship was created by the enactment of the zoning ordinance, the applicant did not voluntarily assume the hardship when it purchased the property.
Finally, the defendant property owner and the defendant Zoning Board of Appeals both argue that strict application of the zoning regulations would restrict the use of the property for any reasonable purpose, and that under Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146 (1976), enforcement of the zoning restrictions would be the equivalent to confiscation of the property. However, it should be noted, the ZBA did not specifically find that failure to grant the variances would amount to a confiscation of the property.
In Chevron, the property at issue was subject to a forty-foot setback which, when taken in conjunction with front and side yard setback requirements, would restrict its usable area to only 3,600 square feet or less than 15 percent of its area. Chevron, 170 Conn. 148-148. The defendant ZBA denied plaintiff's request for a variance of the Setback Regulation from 40 to 20 feet, and the plaintiff appealed. The trial court directed the board to grant the variance and the Supreme Court upheld this decision.
The relevant portion of the Chevron decision involves the court's determination that the evidence before the ZBA supported a finding of hardship. In its discussion regarding whether the hardship was self-inflicted, the Chevron court stated that "(t)he application of the setback regulation to the . . . property, because of its location and shape, would restrict its use to less than 15 percent of its area. That restriction would apply to any permitted use of the property. The hardship here does not result from (the plaintiff's) successful request to change the zone in 1970; instead, it is solely caused by the application of the Setback Regulation to the unusually shaped subject property." Id. at 150.
Similarly, the record here supports a conclusion that only 7 percent of the property would be left developable in the absence of the requested variances. As previously stated, the hardship in the present case is not self-inflicted. The defendant board did not act illegally, arbitrarily or in abuse CT Page 6934 of its discretion in concluding that an unusual hardship exists.
Furthermore, even applying that portion of Chevron which addresses the issue of confiscation of property, the evidence in the record supports a finding that a confiscation would have occurred had the variance not been granted. In Chevron, the court stated that "(z)oning regulations, so far as they reasonably promote the public health, safety and welfare, are constitutional even though their effect may be to limit the exercise of private property rights. . . . An ordinance which permanently restricts the use of land for by reasonable purpose, however, goes beyond permissible regulation and amounts to `practical confiscation.'" Id. at 151.
At the public hearing, those in attendance discussed at length whether the applicant would still have a reasonable use of the property after 93% of the property was appropriated.
The present case falls within the rule of Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146 (1976) and that therefore, if the Board had failed to issue a variance, a confiscation may well have been effected. The Board did not act illegally, arbitrarily and in abuse of 93% of the applicant's property constituted a hardship.
The plaintiff argues that the board acted illegally in granting the variances because the variances granted are not in harmony with the general purpose and intent of the regulation. The proposed office building is consistent with the comprehensive zoning plan in the area.
The comprehensive zoning plan "is to be found in the scheme of the zoning regulations themselves . . . as well as in the maps and plans, if there be any, filed pursuant to General Statutes sections 8-25, 8-29." Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 656 (1980).
The proposed office building would be located in the TC-80 zone and would only cover about 20% of the property. A 40,000 square foot office building is permitted as a special use in the TC-80 zone under section 4 of the Town of Stonington Zoning Regulations. Under the regulations, the "floor area ratio" is defined as "the total floor area of all buildings on a lot in square feet divided by the area of such lot in square feet." The floor area ratio allowable in the TC-80 zone is .30. The total lot area of the property in this case is 274,100 square feet. The 40,000 square foot building results in a floor area ratio of .146, which is substantially lower than that is permitted in the TC-80 zone. CT Page 6935
Furthermore, the office building would conform to the overall zoning plan for the area. There was testimony in the record that other commercial buildings, such as a Cash True Value Home Center, a restaurant and an office building are already present in the area. There was also testimony that the building would cause no air or water pollution. The plaintiff argues that the area where the building is to be constructed is an environmentally sensitive area because it is partially zoned GBR-130. Plaintiff also expresses concern over the project's impact on the environment, scenic consideration and property values. These issues were raised at the public hearing and were considered in the defendant's decision. Representatives of MGF Development stated at the hearing that:
 One of the points that was brought out at the last meeting was the concern citizens on the Groton Side. That the Mystic River or River Road is soon to be deemed a scenic river road and they were getting a state grant to do that, and what we're proposing on this plan is a waterfront open space park which would be for public access with a little dock gazebo for public access pedestrian right-of-way, which serves to buffer the building. As you see, the park setting in front of the building. It gives public access to the water which is a requirement of the CAM application and DEP, and insures the residents on the other side of the river that this will be well maintained and also visually for the scenic purposes.
 We're 200 feet from the river. There's three acres of buffer in this area here and with the proper vegetation and maintenance and taking care of it and the open space park, we believe that it's a very compatible setting for the office building and also taking in concern any of the visual easements from the other side of the river.
The defendant ZBA, when it granted the variances, did so conditionally upon the Applicant's plan to provide for public access to the Mystic River, the Applicant's providing additional screening along Whitehall Properties and the permanent protection of the adjacent Greenbelt Zone as a park. The defendant considered whether the variances would adversely impact the purposes of the zoning regulations, and accordingly CT Page 6936 did not act arbitrarily, illegally or in abuse of its discretion in granting the variances as stated above.
The plaintiff argues that the variances requested by the applicant would allow construction of an office building eight times the size of what could be built without the variances. The plaintiff further argues that because the Board found in a prior variance application which would have allowed a 40,000 square foot office building, that the variances were excessive, the same variances are excessive in the present application.
The court in Burlington v. Jencik, 168 Conn. 506,508-09 (1975) stated that "(i)n granting a variance, the board is presumed to have acted fairly and upon valid reasons unless the contrary is shown; St. Patrick's Church Corporation v. Daniels, 113 Conn. 132, 139, 154 A. 343; and the board has wide discretion to grant variances. Kamerman v. Leroy, 133 Conn. 232,235, 50 A.2d 175."
There is no evidence in the record that the variances were excessive and that the board did not act fairly.
The parties indicate that the applicant first applied to the defendant Zoning Board of Appeals in March, 1989, seeking a waiver of section 4.55(C) of the zoning regulations, which requires the 100 foot buffer to the GBR-130 zone. This application was denied on April 11, 1989. Thereafter, in May, 1989, a second application was filed, "seeking a variance from Zoning Regulations 4.55B buffer screening to be reduced from 50 feet to 20 feet on the east side and 4.55C to reduce buffer from 100 feet to 85 feet, 25 feet, and 90 feet on west side; 100 feet to 30 feet and 20 feet on south side and 6.6-3A to reduce the number of off-street loading berths from 5 to 2. . . ." This application was denied at a special meeting of the Board on May 16, 1989 because "the solution as proposed doesn't follow CAM (Coastal Area Management) requirements and essentially, the proposed variances are in excess of what is required to allow reasonable usage of the property." It was stated on the record, however, that the ZBA agreed that there was a hardship.
The present application was filed on June 20, 1989 and was granted on July 13, 1989. According to the plaintiff, the subject application was changed in only one respect and seeks substantially the same relief sought in the application denied on May 16, 1989. Therefore, the plaintiff argues, the application granted by the board constitutes a reversal of its early decision.
"Ordinarily, an administrative agency cannot reverse a CT Page 6937 prior decision unless there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided." Malstrom v. Zoning Board of Appeals, 152 Conn. 385, 390-91 (1965); see also Grillo v. Zoning Board of Appeals, 206 Conn. 362, 367 (1988). "The principle applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former. And it is for the administrative agency, in the first instance, to decide whether the requested relief in both applications is substantially the same. Its determination will be disturbed only if its discretion was abused." Fiorilla v. Zoning Board of Appeals, 24 Conn. App. 49, 54 (1991).
The Board did not abuse its discretion in determining that the applicant was not seeking substantially the same relief as that sought in the former applications. There was ample testimony at the hearing outlining the differences between the present proposal and the previous one.
The application granted by the Board does not constitute a reversal of its earlier denials.
The plaintiff argues that approval of the variance with the condition that the applicant insure that no water development except a park occur and the park is designated as such in perpetuity constitutes illegal contract zoning. However, these additions to the application were proposed in response to CAM (Coastal Area Management) recommendations in order to obtain necessary CAM approval. The zoning regulations provide that "The commission may approve, deny, modify or modify with conditions any project within the CAM boundary."
Furthermore, the Connecticut Supreme Court has stated that "(a) zoning board of appeals may, without express authorization, attach reasonable conditions to the grant of a variance." Burlington v. Jencik, 168 Conn. 506, 509 (1975). The plaintiff relies, however, on the case of Bartsch v. Planning and Zoning Commission, 6 Conn. App. 686 (1986) in support of his argument that the Board acted improperly in requiring the public access and park. In Bartsch, the applicant applied for a zone change and special permit to allow him to build a medical building in a Residential AA Zone. The Town rezoned the property conditioned upon the placement of a restrictive covenant on the land records to use the property as a medical office building only and to provide that a buffer zone be created around the property. Id. at 687-88. In holding that these conditions violated Connecticut General Statutes section8-2, which requires that "(a)ll (zoning) regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district. . .," the court stressed that CT Page 6938 the requirement of uniformity in zoning is to assure property owners that there is no improper discrimination and all property owners be treated alike. Id. at 689.
Unlike Bartsch, the application in the present case does not request a rezone and does not present a use inconsistent with the zone. No discriminatory treatment occurred in the present case. The CAM requirement applies because the property is in the coastal zone, and for no other discriminatory purpose.
Finally, "the rationale for permitting conditions to be attached to variances is to make variances more in harmony with the purpose of the zoning regulation. . . ." T. Tondro, Connecticut Land Use Regulations (1979), p. 60. The variance conditioned on the non-development of the shoreline part of the property is consistent with the concerns expressed by the creation of the Greenbelt zone.
The Board's decision was not based on illegal contract zoning.
For the foregoing reasons, the Stonington Zoning Board Appeals did not act illegally, arbitrarily or in abuse of its discretion in approving the three variances at issue. Accordingly, the plaintiff's appeal is dismissed.
J. F. Walsh, J.