[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by abutting property owners from a decision of the Town of Ellington Zoning Board of Appeals to grant an application for a variance.
The issue is whether the defendant, the Town of Ellington Zoning Board of Appeals (hereinafter the Board), acted unreasonably, illegally, or arbitrarily when it granted the defendant's application for a variance.
Because the hardship was self-created, the Board was powerless to grant the variance, and the appeal is sustained.
FACTS
The plaintiffs, Herbert J. Sagendorf and Janet T. Sagendorf, own the property abutting the rear of an approximately nine-acre parcel of land owned by the defendant, Clyde A. Cordtsen, Jr. Supplemental Return of Record (hereinafter SROR), Rear Lot Proposal. The nine-acre parcel is located in an AA residential zone. Return of Return (hereinafter ROR), Legal Notice of Hearing. Cordtsen plans to convey three acres in the rear of his land to his son, who wishes to build a one-family dwelling on it. SROR, Public Hearing Transcript, August 27, 1990, p. 1.
However, the rear lot created by the conveyance would be completely landlocked. Id. While Cordtsen's property borders Route 83, Cordtsen stated on his application that conveying access to Route 83 through his property would not be feasible because his property does not have any more than the minimum frontage required by the Zoning Regulations of the Town of Ellington (hereinafter the Regulations). ROR, CT Page 4399 Application, July 9, 1990. Therefore, Cordtsen approached Arthur Cook, the owner of the land neighboring the three-acre parcel, with a proposal to transfer to Cook a strip of his land adjacent to the rear of Cook's land in exchange for a strip of Cook's land that would provide access from the rear lot to Virginia Drive. SROR, Rear Lot Proposal. Cook is willing to enter into the arrangement. ROR, Application. However, the strip of land providing access from the rear lot to Virginia Drive does not conform to the requirement of Section 5.1(e)(c) of the Regulations that access from a road to any rear lot have a minimum frontage of twenty-five feet. The proposed access has a frontage of only about eighteen feet. SROR, Rear Lot Proposal.
Cordtsen, therefore, applied for a variance from Section 5.1(e)(3) to allow the proposed access to have a frontage of eighteen feet rather than the required twenty-five feet. ROR, Application. The Board held a hearing on August 27, 1990 and continued it on September 24, 1990. SROR, Public Hearing Transcripts, August 27, 1990 and September 24, 1990. The variance was granted on September 24, 1990 subject to the following conditions: (1) that there be speed bumps on the driveway, (2) that drainage be engineered to go back onto the Cordtsen's property, (3) that there be only one residence on the proposed rear lot and (4) that the property of the abutting owners be buffered by either a fence or shrubbery. ROR, Certificate of Variance. The reason given for approval is that "no viable alternative exists to allow the subdivision of the property with proper access for a driveway." ROR, Zoning Board of Appeals Minutes, September 24, 1990, p. 11. The plaintiffs filed their appeal on October 15, 1990.
A hearing was held in Superior Court, Dunn, J., on January 17, 1992, during which additional evidence was taken pursuant to General Statutes Section 8-8 (k). This additional evidence consisted of a warranty deed dated December 1, 1955 by which Cordtsen's father conveyed about fourteen acres more or less to Cordtsen; a quitclaim deed dated December 9, 1968 by which Cordtsen conveyed his interest to both Cordtsen and his wife, Marilyn; a warranty deed dated December 9, 1968 by which the Cordtsens conveyed a parcel of land to the Steffens; a warranty deed dated September 1, 1978 conveying land to the Sagendorfs; a map of the subdivision in which the Sagendorf's property is located; and two photographs of the Steffens' property.
DISCUSSION
A. Aggrievement CT Page 4400
General Statutes Section 8-8 provides that a party must be aggrieved in order to maintain an appeal to the superior court from a decision of a zoning board. Aggrievement was found by the court, Dunn, J., on January 17, 1992.
B. Timeliness
General Statutes Section 8-8 (b) requires that a zoning appeal be commenced "within fifteen days from the date that the notice of decision was published." Here the notice of the decision was published in the Journal Inquirer on September 27, 1990. ROR, Affidavit of Publication. Cordtsen, the clerk of the Board, the chairman of the Board, and the town clerk were served with process on October 11, 1990. Since the process was served within fifteen (15) days of publication, the appeal is timely. See Conn. Pub. Acts No. 90-286, Section 1, 2, 9 (1990).
C. Scope of Review
In zoning appeals, the scope of judicial review is limited. Horn v. Zoning Board of Appeals, 18 Conn. App. 674,676, 559 A.2d 1174 (1989).
 [T]he board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . . [A] reviewing court reviews the record of the administrative proceedings to determine whether. . . . the board `has acted fairly or with proper motives or upon valid reasons.' (Citations omitted).
Schwartz v. Planning Zoning Comm'n, 208 Conn. 146, 152,543 A.2d 1339 (1989).
If the reasons given by the board "are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732, 546 A.2d 919
(1988), aff'd 211 Conn. 76 (1989) (per curiam). "The question [on review of a zoning decision] is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the decision reached." Primerica v. Planning and Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646 (1989). Conclusions reached by the board must be upheld if they are reasonably or adequately supported by the record. Id. CT Page 4401
For the appeal to be sustained, the plaintiff must prove that the Board acted illegally, arbitrarily or in abuse of its discretion in granting the variance.
D. Arguments
The plaintiffs make a number of arguments. First, they argue that Cordtsen did not show exceptional difficulty or unusual hardship. While Cordtsen claims that the hardship suffered is that the rear lot would be landlocked, the plaintiffs appear to argue that this was self-created in that Cordtsen had owned the land west of the proposed rear lot and east of Somers Road (Route 83), but had transferred the land to the Steffens who are now his neighbors. The plaintiffs maintain that this transfer created Cordtsen's problems with access, and that when a hardship arises from an applicant's voluntary act, the Board lacks the power to grant a variance. At oral argument, the plaintiffs also argued that the defendant would be creating the landlock, and thus, the hardship, simply by conveying the rear land to his son. The plaintiffs further argue that the sole purpose of the variance is to develop the property and thereby benefit financially, but that financial loss or benefit is not a proper basis for granting a variance.
The plaintiffs also assert that the proposed rear lot is a resubdivision within the meaning of General Statutes Section 8-18, that Cordtsen was required but failed to submit plans for resubdivision to the planning commission for approval pursuant to Section 8-25 and Section 8-26, and that therefore, the Board acted illegally in granting the variance.
Next, the plaintiffs contend that the Board failed to consider the factors set forth in Section 8-6 such as the effect of the variance on the general character and quality of the surrounding properties, traffic, safety, and property devaluation of neighborhood homes.
Finally, the plaintiffs maintain that the variance application itself was facially detective in that it states that the zoning regulation which the Cordtsen's sought to vary is Section 5.2 rather than Section 5.1(e)(3). The plaintiffs contend that since the application was defective on its face, the Board's action on it was illegal and void.
The defendant zoning board adopts and concurs in the arguments made by the defendant Cordtsen. Cordtsen argues that all means of access other than Route 83 and the proposed access were eliminated as a result of an abutting subdivision CT Page 4402 and development in 1968, and that access from Route 83 would have presented a problem even if Cordtsen had not transferred the property to the Steffens. He lists five reasons why access from Route 83 would pose an unusual hardship even if the Cordtsens had not transferred property to the Steffens: (1) since Route 83 is heavily traveled, "further driveway cuts would create serious public safety hazards;" (2) "to negotiate an access over [an approaching grade ranging from 16% to 18%], the [zoning regulations] require a variance; additionally, the Applicant would find it necessary to obtain grading easement from abutting land owners;" (3) it "would necessitate wetland crossings, requiring additional . . . permits, and the wetlands would be disturbed;" (4) "[t]he only available location on Route 83 for a driveway cut would entail easements or property transfer from an abutter, as well as require the demolition of an existing barn and swimming pool . . . [P]ermits for the demolition would be required, as well as variances because the neighbor would then have insufficient frontage for compliance with Town regulations;" (5) "[t]his driveway would be approximately 1080 feet over a steep grade" and "would pose a considerable hazard to emergency vehicles, as well as cause problems for the homeowners during snowy, icy and wet weather."
Cordtsen asserts that the proposed access from Virginia Drive is the only available and feasible one, that it runs with the contour of the property, that an additional driveway off Virginia Drive will have a minimal effect on traffic and safety, that it is safe and appropriate for emergency vehicles, and that while the driveway's frontage will be 18.04 feet, the driveway will widen to 25 feet within 50 feet of the length of the proposed driveway. He asserts that there exists a particular topography or land condition that justifies the granting of the variance.
Cordtsen also states that his purpose in seeking a variance is not financial gain or loss but is to obtain access to the rear of the land in order to be able to apply for subdivision approval for the creation of a rear lot to be given to Cordtsen's son.
As to the plaintiffs' argument that the defendant is attempting a resubdivision but has not applied for a resubdivision, the defendant argues that the approval of the variance must be granted before the defendant may submit a subdivision plan for the Board's approval.
The defendant further claims that the record shows that the Board did take into account the effect the variance may have on the general quality of the surrounding properties in CT Page 4403 that the Board granted approval subject to conditions addressing the safety and quality of the neighborhood.
Last, the defendant responds to the plaintiffs' argument that the application was fatally defective by stating that since the legal notice was published with the correct citation to the regulations, the public had proper notice of the purpose of the public hearing.
E. Analysis
Section 10.1 of the zoning regulations provides that "[t]here shall be a Zoning Board of Appeals whose powers and duties shall be as provided in the General Statutes, Chapter 124, Section 8-6, 1958 revision, as amended." The authority of a zoning board of appeals to grant a variance under General Statutes Section 8-6 (3) "requires the fulfillment of two conditions: `(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.'" Grillo v. Zoning Board of Appeals, 206 Conn. 362, 368,537 A.2d 1030 (1988). "The power of authorizing variances is to be sparingly exercised." Talmadge v. Board of Zoning Appeals, 141 Conn. 639, 643, 109 A.2d 253 (1954).
An unusual hardship "must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner." Smith v. Zoning Board of Appeals, 174 Conn. 323, 327, 387 A.2d 542 (1978). "Where the claimed hardship arises from the applicant's voluntary act, . . . a zoning board lacks the power to grant a variance." Pollard v. Zoning Board of Appeals, 186 Conn. 32, 39,438 A.2d 1186 (1982). A board lacks power to grant a variance where the applicant or his predecessor created the nonconformity. Id., 40. "The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance" or arises as a result of an act by one other than the one whom the variance will benefit. Id., 39. "A hardship resulting from the peculiar topography or condition of the land or from a particular location which makes the land unsuitable for the use permitted in the zone in which it lies may well be such a hardship as is contemplated by the ordinance." Fiorilla v. Zoning Board of Appeals, 144 Conn. 275, 280, 129 A.2d 619
(1957).
The plaintiffs' main argument is that the "unusual CT Page 4404 hardship" requirement has not been met. The issue is whether the claimed hardship arises from the applicant's voluntary act or as a result of an act by one other than the one whom the variance will benefit.
The record reveals that while the Board found a hardship based on topography, the Board made no findings as to whether or not there was a self-created hardship. The record indicates that the hardship was self-created.
However, the self-created hardship did not arise from the sale in 1968 of three acres of the original lot to the Steffens. Although there is conclusive evidence that the Cordtsens originally owned and conveyed to the Steffens the three-acre lot abutting their property to the north, and abutting the proposed rear lot to the west; ROR, Public Hearing Transcript, September 24, 1990, p. 31; the record also contains some evidence that even if the land had not been conveyed, it would not have been topographically possible to develop an access from Route 83 through that land to the proposed rear lot.
The Town Planner, Joseph BaKer, stated at the September 24, 1990 hearing that he had analyzed the topography of the site including "the subdivision, adjacent properties of Mr. Chapman and the adjacent properties immediately to the north of the site." SROR, Public Hearing Transcript, September 24, 1990, p. 25. He explained that "this is essentially a shelf of property that . . . has about a two to three acre site flat shelf up there after you come off a steep rise off of 83, there you hit that shelf and you have another steep rise that continues up essentially where Virginia Drive goes." Id. He concluded that "[a]nywhere further north or west, east of the Cordtsen's property is not viable because of the grade." Id. This testimony indicates that even if the Cordtsens still owned the land currently owed by the Steffens, the topography of the land would not have allowed the Cordtsens to develop an access way through that land that would have complied with the grading requirements of the regulations. Therefore, in this case, the sale of the land to the Steffens did not give rise to a self-created hardship.
However, as to the plaintiff's argument that the hardship would be self-created as a result of the Cordtsen's conveyance of the property to his son, this constitutes a self-created hardship. In Aitken v. Zoning Board of Appeals,18 Conn. App. 195, 557 A.2d 1265 (1989), the applicant requested a variance of the town's frontage requirement from 130 feet to zero feet in order to be able to subdivide his property. The applicant's reason for the hardship was that CT Page 4405 he was unable to care for the property. A prior variance had been granted in 1977. There was no other evidence of a hardship. In upholding the board's decision, the trial court found the board's "recognition of its prior granting of a variance" determinative of hardship. Id., 197. The appellate court set aside the trial court's judgment and held that "[a]bsent the variance, [the applicant] will not be able to subdivide his property. This situation was self-created and, therefore, not a sufficient reason to depart from the zoning regulations." Id., 206. That holding applies to the present case. Therefore, the Cordtsen's rear lot proposal is a self-created hardship.
Since the Cordtsen's rear lot proposal is a self-created hardship, the Board did not have the power to grant the variance, and the appeal is sustained.
As to the plaintiffs' other arguments, they are without merit. As to the plaintiffs' argument that the variance was sought and granted because of potential financial advantage, the law of variances could not have been meant to prevent the Board from granting all variances that would allow some development, and that therefore, the bare assertion that the defendant will benefit financially without more is not sufficient to sustain the appeal. The plaintiffs' argument that the "variance . . . constituted a [resubdivision]" is without merit in that it would be pointless to apply for approval of a resubdivision plan without obtaining a variance. Furthermore, a planning commission is not authorized to approve a subdivision or a resubdivision which conflicts with zoning regulations. General Statutes Section8-26. With regard to the plaintiffs' contention that the Board "failed to consider the factors as set forth in [Section 8-6]," the record is replete with evidence that the Board considered the possible effect of the variance on public health, safety, convenience, welfare and property values. ROR, Certificate of Variance; SROR, Public Hearing Transcript, September 24, 1990, p. 4-9, 10-13, 15, 22, 23, 33-34. After lengthy discussion of such factors, the Board granted the variance subject to conditions which directly address those factors. ROR, Certificate of Variance. Last, the plaintiffs cite no law in support of their final argument that an error on an application is fatally defective and would constitute a valid ground to sustain their appeal. Nor have they shown that they were prejudiced in any way by this error. Therefore, this error does not constitute a valid ground to sustain the appeal.
CONCLUSION CT Page 4406
Since the record indicates that the hardship was self-created, the Board was powerless to grant the variance. Therefore, since the Board did not have the power to grant the variance, the appeal is sustained.
BY THE COURT, HON. PHILIP DUNN SUPERIOR COURT JUDGE