[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I BACKGROUND
In this appeal, the Plaintiffs challenge the decision of the Ridgefield Zoning Board of Appeals (ZBA) approving a variance to permit an accessway to serve four lots on a 17.341 acre parcel of land of the Defendant, Selma Buchsbaum, (Buchsbaum).
Section 301.0(b) of the Ridgefield Zoning Regulations permits three lots to be served by an accessway.[1] Ridgefield Subdivision Regulation § 2-1 defines an "accessway" as "a private way for vehicular traffic providing access to a street for not more than three lots, the areas of which shall be computed exclusive of the area of such accessway." Also, § 4-12 of the Ridgefield Code of Ordinances, Subdivision Regulations, provides that the grade of an accessway shall not exceed 12 percent.
The 17 plus acre parcel involved here is located in a 3 acre residential zone and Buchsbaum, as part of the planned four lot subdivision, intended to donate more than 8 acres to the town as undisturbed open space. Buchsbaum claimed a hardship based on the topographical conditions and wetlands areas of the parcel. CT Page 1499
The board held public hearings, heard from experts and the applicant, walked and viewed the parcel, reviewed maps, and unanimously voted to grant the variance requested for the following reasons:
1. The topography of the property, its hydrological and drainage problems and the presence of wetlands represent an unusual hardship and practical difficulty that justify the grant of the variance in this case.
2. Whether the property is entitled to three or four lots is not an issue before the board but is rather an issue to be decided by the planning and zoning commission. The property is entitled, as of right, to an accessway serving three lots. If a fourth lot is approved by the planning and zoning commission, the addition of that fourth lot off this accessway from Spring Valley Road will have minimal impact. An additional accessway to serve the fourth lot would have much greater impact, whether from Bridle Trail or a second entrance from Spring Valley Road. The board has a duty to minimize the impact of the regulations, and by not allowing an access from Bridle Trail, it fulfills that duty.
3. The board recognizes that there are drainage problems in this area of town. However, with the above conditions, the proposal is not contrary to the public health, safety or welfare. In fact, the variance will minimize the impact of the disturbance of land and wetlands, as evidenced by the report from the New York City Department of Environmental Protection. It is in harmony with the general scheme of development in the area.
The conditions imposed on the approval were:
1. The accessway shall be constructed exactly as shown on a map presented to the board during the hearing entitled: "Planned Residential Development Site Development Map, prepared for Sandy and Selma Buchsbaum," prepared by Steven D. Trinkaus, P.E., dated 12/2/99, revised 2/28/2000.
2. A detention basin/pond shall be constructed at the base of Lot 1, as described by the engineer during the hearing, so as to diminish to the extent possible the potential outflow of drainage from this accessway.
3. No access for vehicular traffic shall be provided from Bridle Trail.
In accordance with the procedure followed by the Ridgefield zoning authorities, Buchsbaum must apply for subdivision approval after final determination of her variance request. The requested variance is a requisite preliminary step prior to presentation of this four lot CT Page 1500 subdivision application, without a second accessway, to the planning and zoning commission.
The Plaintiffs' appeal primarily focuses on the issue of whether a hardship was shown which would justify and permit the ZBA to grant the variance. The Plaintiffs also question whether, by way of the conditions imposed, the ZBA acted in excess of its authority.
These are the only issues which were briefed by the Plaintiffs, and therefore, any other issues raised in the appeal are deemed abandoned.
 II AGGRIEVEMENT
The Plaintiffs are owners of property within one hundred feet of the Buchsbaum property, the Thompson and Harakal property abutting, and the Lodewick property opposite across the street from the Buchsbaum parcel. The Plaintiffs are statutorily aggrieved.
 III STANDARDS FOR COURT REVIEW
As a general rule, in appeals from decisions on variance applications, courts are not to substitute their judgment for that of the board and their decisions are not to be disturbed so long as the board has reasonably and fairly exercised its honest judgment after a full hearing. Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206 (1995). The court's function is to review the record to determine whether it acted fairly, with proper motives, and for valid reasons, and the burden is on the plaintiffs to demonstrate that the board acted improperly. Id., 206.
The Plaintiff's claim that the ZBA should not have granted the variance and that no hardship was shown. Whether, in any given case, the situation is such as to constitute such an exceptional set of circumstances as to warrant the granting of a variance is an issue, in the first instance, for the zoning board to determine. Libby v. Board of Zoning Appeals,143 Conn. 46, 52 (1955). Once a decision has been made, the burden on overturning a decision of the board is on the Plaintiff. Murphy, Inc. v.Board of Zoning Appeals, 147 Conn. 358, 360-61 (1960). In Bloom, supra, the Supreme Court summarized many of the rules and requirements for the granting of a variance.
 A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of CT Page 1501 the town.
Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206 (1995).
 It is well established, however, that the granting of a variance must be reserved for unusual or exceptional circumstances. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone. . . . Accordingly, we have interpreted General Statutes (Rev. to 1993) § 8-6 to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance.
(Citations omitted; internal quotation marks omitted.) Bloom, supra, 206-208.
Where a board has stated the reasons for its actions, as here, the court's function is to determine whether the stated grounds, or any one of them, is reasonably supported by the record and whether the reasons are pertinent to the considerations which the authority was required to apply under the zoning regulations. A board's decision must be sustained if even one of the stated reasons is sufficient to support it. Id., 208.
In order to justify a variance, the hardship must differ from the conditions that generally affect the property owners in the same area and it must arise from circumstances beyond the control of the property owner seeking the variance. Smith v. Zoning Board of Appeals, 174 Conn. 323,327 (1978). The hardship must originate in the regulation or ordinance and arise from the application of the regulation or ordinance to the subject property. Pollard v. Zoning Board of Appeals, 186 Conn. 32, 39-40
CT Page 1502 (1982); Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 658 (1980).
 A Topography as a Hardship
Buchsbaum's claim of hardship was based on the topography of the parcel, its steep slopes and significant wetlands. Particulars on these issues were presented to the board by maps, site plans with actual topographical features including elevations, grades, soil conditions and wetlands, and by expert testimony from a professional engineer. The board was presented with and considered possible alternatives for access to Lot 4, and the difficulties each of these would entail. Members of the board did a site review and walked the property.
Topographical conditions have been recognized as a valid basis for the granting of a variance where the peculiar topography or condition of the land or location makes the property unsuitable for the use permitted in the zone in which it lies. Fiorilla v. Zoning Board of Appeals,144 Conn. 275, 280, (1957); Plumb v. Board of Zoning Appeals,141 Conn. 595, 601, 108 A.2d 899 (1954); Giarrantano v. Zoning Board ofAppeals, 60 Conn. App. 446, 453 (2000); Stillman v. Zoning Board ofAppeals, 25 Conn. App. 631 (1991); Polk v. New Milford Zoning Board, Superior Court, judicial district of Litchfield at Litchfield, Docket No. 079474 (Jan. 6, 2000, DiPentima, J.); O'Sullivan v. Town of Hamden, Superior Court, judicial district of New Haven at New Haven, Docket No, 416003 (Jul. 20, 1999, Downey, J.), 1999 Ct. Sup. 9999; Beaver Dam LakeAssn. v. Board of Zoning Appeals of Stratford, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 349387 (May 27, 1999,Cutsumpas, J.); Maliszewski v. Salisbury Zoning Board, Superior Court, judicial district of Litchfield at Litchfield, Docket No. 078064 (Apr. 22, 1999, Pickett, JTR.); Miles v. Zoning Board of New Canaan, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 292009 (April 12, 1993, Levin, J.); see Anderson, American Law of Zoning, 3d ed. § 20.56.
The topographical hardship required for a variance need not be so severe so as to constitute a practical confiscation. Whittaker v. ZoningBoard of Appeals, 179 Conn. 650 (1980); Fiorilla v. Zoning Board ofAppeals, 144 Conn. 275, (1957); Goldreyer v. Board of Zoning Appeals,144 Conn. 641 (1957); Wadell v. Board of Zoning Appeals, 136 Conn. 1
(1949); Giarrantano v. Zoning Board of Appeals, 60 Conn. App. 446, 453
(2000); Wallingford Zoning Board v. Wallingford Planning ZoningCommission, 27 Conn. App. 297 (1992); Stillman v. Zoning Board ofAppeals, 25 Conn. App. 631, 636-37 (1991), cert. denied, 220 Conn. 923
(1991); Miles v. Zoning Board of Appeals of New Canaan, Superior Court, CT Page 1503 judicial district of Fairfield at Bridgeport, Docket No. 292009 (Apr. 12, 1993, Levin, J.). "Satisfaction of the requirement that the circumstances which result in unnecessary hardship be peculiar to the applicant's property is most clearly established where the hardshiprelates to the physical characteristics of the land. Where, for example, peculiarities of size, shape. grade of the parcel in question are unique and if the hardship relates to these, the requirement of unique circumstances is met." (Emphasis added.) 3 Anderson, American Law ofZoning 3d § 20.36, p. 478; Fiorilla v. Zoning Board of Appeals, supra, 279-80; Plumb v. Board of Zoning Appeals, 141 Conn. 595, 601
(1954).
Here, Buchsbaum's claim for a variance to permit the four lots to be served by one accessway was based on the peculiar topography of the parcel, its hydrological and drainage problems, and the presence of wetlands. The variance requested would reduce the grade of the access and minimize the effect on the wetlands. The variance only related to access and was not related to the size of the lots.
Prior the board's decision to grant the variance, it considered other possible means of access. The board was made aware of unique problems related to this parcel's topography including the existence of an eroded channel, some 6 feet deep and 6 feet wide, and a natural stream. Any attempt to try to control the effects of these conditions would require installation of a 36 inch culvert, reinforced concrete pipe, and significant earth disturbance with intrusion into wetlands.
At the board meeting considering the application, an engineer explained the significance of the steepness of the slopes, the drainage conditions, the amount of disturbance of earth and wetlands that would be required with each of the possible entrances being considered, and advised that, considering the conditions on this property, one accessway for the four lots was the correct way to proceed. A letter from the New York City Department of Environmental Protection was introduced which encouraged the granting of the variance "in order to avoid constructing a separate driveway and potentially impacting the on site wetlands."
The zoning board also heard testimony from other witnesses, received maps, site plans and surveys, including a topographical map, and walked the land. These revealed that construction of a separate accessway from Bridle Trail Road to the fourth lot would present a severe problem due to the presence of a stream bed, that any crossing would require extensive drain work, intrusion into the wetlands and into a body of water, that the Bridle Trail area washes out with any heavy storm, exactly where the accessway to Bridle Trail Road was considered, that extensive repairs are needed every year, that Bridle Trail Road is a steep ditch, that using it CT Page 1504 would require a lot more construction and a lot more driveway than by simply using the accessway serving the other three lots onto Spring Valley Road, and that it would be a monumental task to attempt a separate access to the fourth lot through Bridle Trail Road.
The credibility of witnesses and the determination of factual issues are matters within the province of the zoning board of appeals.Stankiewicz v. Zoning Board of Appeals of the Town of Montville,15 Conn. App. 729 (1988); Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 49 (1984). The evidence before the board, including the knowledge acquired from the members' examination of the parcel and testimony from the professional engineer, provided abundant support for the board's determination that a hardship existed with regard to this parcel. Furthermore, there is no claim in the record, or in the Plaintiffs' memorandum, that this variance substantially affects Ridgefield's comprehensive zoning plan. The requested variance simply allows an additional residential lot to be served by an accessway. It does not change a permitted use, reduce minimum lot size, shape or frontage nor reduce required setbacks. It requests that one additional single family home share a common driveway with three other single family homes in this single family zone. Granting of the proposal would lessen the amount of required excavation, filling, and disturbance of wetlands. The board had more than sufficient evidence for its finding that the proposal was not contrary to public health, safety or welfare and was in harmony with the general scheme of development in the area.
The court finds that there is substantial evidence in the record on which the board could base its decision to approve the subject application. The Plaintiffs have failed to establish, by a fair preponderance of the evidence, that the board, in approving the subject application for a variance, acted illegally, arbitrarily, capriciously, improperly as a matter of law, or in excess or abuse of its discretion.
 B Conditions
The Plaintiff also contends that the board included, in its approval of the variance, conditions which were in excess of its authority because they related to wetland conditions.
It is, however, well established in Connecticut law that zoning boards of appeals are empowered to grant variances subject to conditions.Vaszauskas v. Zoning Board of Appeal, 215 Conn. 58, 63-65 (1990). It is required, however, that any such conditions imposed by the zoning authority be reasonable. Id., 64. CT Page 1505
The applicant, Buchsbaum, has raised no objection to the conditions. The record is clear that the Buchsbaum subdivision must still be submitted to the local wetlands and planning and zoning cow missions. Whether the decisions of these town agencies will affect in any way the variance granted by the board cannot at this point be determined. The only effect, at present, of the variance is that it allows the accessway to become part of a subdivision plan to be submitted to the wetlands agency and the planning and zoning commission.
There is no evidence that any of the conditions imposed are unreasonable. The board, as part of its inherent power to impose conditions on variances, has set conditions clearly intended to protect the community, and no objection has been raised by the party upon whom the conditions have been imposed. Under Vaszauskas, supra, the conditions in this case cannot be said to be patently unreasonable.
 IV CONCLUSION
The appeal is, accordingly, dismissed.
Hiller, J.