******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARYLOU C. AMENDOLA *v.* ZONING BOARD OF
APPEALS OF THE CITY OF WEST HAVEN
(AC 36811)

HOWARD WARREN BENEDICT ET AL. *v.* ZONING
BOARD OF APPEALS OF THE CITY
OF WEST HAVEN
(AC 36813)

DiPentima, C. J., and Beach and Lavery, Js.

*Argued September 16—officially released December 15, 2015*

(Appeal from Superior Court, judicial district of New
Haven, Frechette, J.)

*Timothy B. Yolen,* for the appellants in both
appeals (plaintiffs).

*Charles R. Andres*, for the appellee both appeals (named defendant).

*Michael A. Leone*, with whom, on the brief, was *Brian G. Enright*, for the appellee in both appeals (defendant Robert Fischer).

*Opinion*

LAVERY, J. These two appeals raise the common question of whether the size and shape of the subject property constituted a legally recognized hardship.[1] In 2009, the defendant Zoning Board of Appeals of the city of West Haven (board), granted six variances sought by the applicant, the defendant Robert F. Fischer,[2] to expand his already nonconforming dwelling. Fischer's immediate neighbors, the plaintiff in AC 36811, Marylou C. Amendola and her husband, Vincent Amendola, to the west of Fischer, and the plaintiffs in AC 36813, Howard Warren Benedict and Barbara Spencer Benedict, to the east, appealed from the board's decision to the Superior Court. The court heard together and dismissed both appeals, concluding, inter alia, that the administrative record supported the board's finding of a legally recognized hardship necessary for the granting of a variance. These certified appeals followed, with the dispositive issue in both cases being whether a legally recognized hardship exists. We conclude, for the reasons that follow, that the finding of hardship was improper and, accordingly, reverse the judgments of the Superior Court.

I

The property at issue (property) in this appeal is located at 201 Ocean Avenue in West Haven. It resembles a long and narrow rectangle, measuring approximately 50 feet wide by 200 feet long and stretches from Ocean Avenue, to the north, to Long Island Sound, to the south. Between the southern border of the property and Long Island Sound, as is the case with many of the other properties situated between Long Island Sound and Ocean Avenue, runs an unimproved utility and sewer easement known as Old King's Highway. As a result, the property has two front yards; one abuts the street and the other the water. The two longer sides of the property separate it from its Ocean Avenue neighbors. The Amendolas share an approximately 219.1 foot boundary with the property to the west, and the Benedicts share an approximately 198.5 foot boundary with the property to the east. Altogether, the property lot measures approximately 10,400 square feet.

On the property stands Fischer's two-story single-family residential dwelling. The dwelling measures 30 feet wide by 35 feet long and is set back 10 feet on both its east and west boundaries. Like most of the surrounding homes, the dwelling is located closest to the water side of the property. As a result, while it is setback approximately 158.5 feet from its Ocean Avenue border, the setback from Long Island Sound is nonexistent because a deck, measuring 30 feet wide (the width of the dwelling) extends 18 feet from the dwelling toward the Sound and thus encroaches onto the Old King's Highway easement.

According to the city's zoning map, the property is located in an R-2 "single-family residential district." West Haven Zoning Regs., § 11. Under the West Haven zoning regulations, and as summarized by the Superior Court, the property "is nonconforming in four respects: (1) the dwelling is located on a 10,400 square foot lot, where a 16,000 square foot lot is required; (2) the front yard setback on the waterside of the property is nonexistent, where a thirty foot setback is required, as the attached deck encroaches on Old King's Highway; (3) the side yard setbacks are each ten feet wide, where fifteen foot setbacks are required; and (4) the street frontage is fifty feet wide, where eighty feet is required. . . . Nevertheless, because the dwelling predates the existing regulations, and because of a previous setback variance, the dwelling is a legally nonconforming structure and requires no modification. See generally West Haven Zoning Regs., § 82."[3] (Citation omitted; footnote omitted.)

On March 13, 2009, Fischer applied for six variances from the West Haven zoning regulations to expand the existing dwelling. Along with a building coverage variance and a lot coverage variance, Fischer requested four setback variances to construct: (1) an addition on the street side of the property allowing him to nearly double his living space; (2) an attached three car garage to be located on the street side of the newly constructed addition; (3) an addition on the water side of the dwelling, by enclosing a portion of the existing deck; and (4) a second floor balcony on the water side, that would extend from the second floor of the newly enclosed addition to the end of the current deck.[4] With respect to the claim of hardship, Fischer stated that "[t]he lot size limits the full enjoyment of th[e] property, [and the] undersize lot and shape were developed prior to the current zoning."

On April 15, 2009, the board held a public hearing on Fischer's application. At the hearing, Brian Enright, counsel for Fischer, explained that the expansion was necessary for "additional dwelling space," and "to procure reasonable use of the lot." Enright further stated that the hardship underlying the requested variances was due to the small size of the lot, its rectangular shape, and the location of the unimproved Old King's Highway easement.

Enright further informed the board that not only was the expansion plan influenced by the size and shape of the lot, but the expansion plan also reflected the concerns of Fischer's neighbors. For example, Enright stated that "in an effort to try and address some of the concerns of the neighbors, [Fischer] shortened the addition on the [Sound] side and moved it approximately 1.25 feet closer to Ocean Avenue." He explained that under the original plan, "the entire addition of the house was going to go out approximately 8.25 feet on

the easterly boundary. . . . [The new plans] reduced that portion of the addition on the beach side or ocean side to a maximum of 7 feet."

Enright also argued that although the new expansion plans resulted in an impermissible increase of a nonconforming structure; see West Haven Zoning Regs., § 82.3;[5] the expansion was reasonable because it would not increase the dwelling's encroachment into the required setback area. He explained that while the size of the dwelling would increase, the degree of the dwelling's noncompliance with the setback requirements would remain the same. For example, Enright described the first floor expansion on the water side, to be constructed by enclosing the existing deck, as "being built completely within the existing structure's footprint. There is an existing deck that you can see on the plan. We are not exceeding the existing footprint in any fashion." Likewise, he described the construction of a new second floor deck on the water side of the dwelling as "be[ing] flush up against the house here again running along that same line. . . . So again because this is a structure even though it's on the second floor and not on the ground floor, it does require a variance because it does run flush with the building it would in fact be 10 feet from the side yard where 15 is required but again consistent with the current lines of the building." Finally, he described the street side addition as merely maintaining the nonconforming dwelling by saying, "[t]his addition would require a variance because it would be 10 feet from the side yard where 15 is required. Again, the existing home is 10 feet from the side yard. So it's consistent with the current use."

In response to a question from the board, Enright clarified that it was Fischer's preference to construct a nonconforming attached garage, instead of a detached garage that would conform to the regulations. He explained: "As you folks are aware, if this were a true garage, if it were a detached structure and while we understand that there are certain size limitations relevant to that in an R-2 zone this building could actually be placed as close as 4 feet to the neighboring side yard. We believe for a lot of reasons that attached is more appropriate. We think esthetically it works better for the neighboring properties. We think that it clearly makes more practical sense. . . . We think from the standpoint of esthetics and overall property values of everyone around us, it works better i[n] this fashion. We understand that . . . reasonable men and women that can differ and you may hear those opinions but we think this is the most appropriate and most limited variance to ask for this portion of the application."

Following Enright's presentation, the board heard from members of the public. Vincent Amendola, Fischer's neighbor to the west, argued that the proposed plans would interfere with his water view, property

enjoyment, and expectation of privacy. Further, he objected to the variance application on the grounds that no hardship had been shown, stating that, "Mr. Enright talked about hardship being shape and configuration. I respectfully disagree with that. This is a square lot. It's 50 feet wide by 198 feet on one boundary with the Benedicts and 219 feet on the boundary that abuts our property. If you look in West Haven, there must be hundreds, maybe more than hundreds, maybe a thousand, 50 by 100 square foot lots here. So to say that this is a hardship because he's got a 10,440 square foot lot, I would respectfully disagree with that. . . . So there is nothing exceptionally hard here. There's nothing unusual. There's nothing peculiar to his lot. His lot is no different really than mine or many of the lots that border Ocean Avenue." Furthermore, Vincent Amendola pointed out that construction alternatives requiring less intrusive variances were available to Fischer, such as building an addition in a different location. For example, he stated that "[i]f Mr. Fischer wanted to put a 60 foot addition on his property going back towards Ocean Avenue, he could do that. He would still need a variance of course because of the maximum lot coverage. But the point I am trying to make is there is a tremendous amount of room back there that he could take advantage of to have his addition. So he would in no way shape or form be denied the reasonable use of his property."

Likewise, Howard and Barbara Benedict, Fischer's neighbors to the east, opposed the variance application, arguing that increasing the size of the dwelling would result in a structure that is "overpowering for the size of the lot and particularly overpowering in length. . . . It's so long and it's so close and that is a 24 foot high garage that is attached coming 5 feet from the property line. So it's really in your face. When that goes up, it's going to be enormous." With respect to the garage, the Benedicts echoed the concerns of Vincent Amendola, arguing that Fischer could construct a detached garage without the need for setback variances. Barbara Benedict stated, "[t]here's plenty of room on the property. As [Vincent] Amendola said, we can't have everything we want. I'm willing to say if he wants a three car garage if it's separate. I wouldn't even object to the height if it was attractive and it looked like a nice structure. . . . There's plenty of space to do what he wants." After hearing from the plaintiffs and other members of the public, the board continued the hearing until August 19, 2009.

On August 19, 2009, the board, without giving a statement of its reasons, granted Fischer's application. On September 4, 2009, the plaintiffs commenced two separate appeals from the decision of the board in the Superior Court. In their complaints, which are nearly identical, the plaintiffs alleged, inter alia, that the board, in granting the requested variances, "acted illegally,

arbitrarily, and in abuse of the discretion vested in it in that . . . [t]here was no substantial evidence upon which the Board could have found the claimed hardship to exist."

On January 25, 2013, the court held a hearing on both appeals. On July 16, 2013, the court, in a memorandum of decision, dismissed both appeals, concluding that the board's decision was not unreasonable, arbitrary, or illegal. Specifically, the court determined that "the unusually narrow shape of the subject property and the presence of Old King's Highway on the water side of the property support the board's finding of hardship. The subject lot is merely 10,400 square feet, which is approximately 60 percent of the minimum area for properties located within the R-2 district. West Haven Zoning Regulations § 11, Table 11.1. . . . After accounting for the side yard setbacks, the buildable area is merely twenty feet wide. Id. Therefore, absent a variance, the property could hardly be put to any conforming use." Finally, relying on *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 327, 387 A.2d 542 (1978), for the proposition that "the hardship must be different in kind from that generally affecting properties in the same zoning district," the court concluded that "[a]lthough other properties on Ocean Avenue are similarly undersized and thus similarly impacted by the zoning regulations, these particular conditions are unique to properties that border this section of the Long Island Sound, and not the remaining lots that occupy the sprawling R-2 district." Both plaintiffs then filed separate petitions for certification to appeal pursuant to General Statutes § 8-8 (o). This court granted the petitions, and these appeals followed.

## II

We begin by setting forth our standard of review applicable to appeals from a decision of a zoning board. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule . . . ." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 559, 916 A.2d 5 (2007). "We must determine whether the trial court correctly concluded that the board's act was not arbitrary, illegal or an abuse of discretion . . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing . . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Zoning Board of Appeals*, 107 Conn. App. 861, 867, 946 A.2d 916 (2008).

"When a zoning board states the reasons for its action, the question for the court to pass on is simply

whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the [board] is required to apply under the zoning regulations. . . . The court should not go behind the official statement of the board." (Citations omitted; internal quotation marks omitted.) *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 152–53, 365 A.2d 387 (1976). "In the absence of a statement of purpose by the zoning [board] for its actions, it [is] the obligation of the trial court, and of this court upon review of the trial court's decision, to search the entire record to find a basis for the [board's] decision." (Internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 423, 788 A.2d 1239 (2002).

In this case, although board members discussed the characteristics of the property and conditions for granting the proposed variances, the record does not contain a collective statement of the board's reasons for granting the variances. See *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208–209, 658 A.2d 559 (1995) ("although individual members of the board discussed reasons for granting the owners a variance, the board did not state a collective, official reason for its action"); *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 546 n.15, 600 A.2d 757 (1991) ("[i]t [is not] appropriate for a reviewing court to attempt to glean such a formal, collective statement from the minutes of the discussion by commission members prior to the commission's vote"). As a result, we must review the entire record to ascertain whether "the evidence reveals any proper basis for the board's decision to grant the variances in the present case." *Verrillo* v. *Zoning Board of Appeals*, 155 Conn. App. 657, 676, 111 A.3d 473 (2015).

### III

Before considering the specific claim advanced in this appeal, we first review the standard in our state for granting a variance. General Statutes § 8-6 provides a municipal zoning board of appeals with the power to grant a variance from compliance with local zoning regulations to a specific piece of property.[6] Although a zoning board of appeals has such power, the variance power should be used sparingly for "[t]he granting of a variance is no insignificant matter, as it runs with the land in perpetuity"; id., 679; see also *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972) ("a variance is granted with respect to a particular piece of property; it can be enjoyed not only by the present owner but by all subsequent owners"); and "constitutes permission to act in a manner that is otherwise prohibited under the zoning law of [a] town." *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 206. As a result, a zoning board may not exercise this

authority unless "two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) Id., 207. Moreover, a zoning board may grant a variance "only where a situation falls fully within the specified requirements." *Allen* v. *Zoning Board of Appeals*, 155 Conn. 506, 510, 235 A.2d 654 (1967). "[U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted." *Gregorio* v. *Zoning Board of Appeals*, 155 Conn. 422, 427, 232 A.2d 330 (1967). Therefore, without such a showing of hardship, one does not simply get a zoning variance.

The first part of the test, that the use requested by the variance application is in accord with the comprehensive zoning plan, is usually met when the use to be allowed by the variance is consistent with other uses in the area. See *Eagan* v. *Zoning Board of Appeals*, 20 Conn. App. 561, 564–65, 568 A.2d 811 (1990) (concluding variance application to construct single family home in violation of lot area and setback regulations complied with comprehensive zoning plan in residential zoning district where many single family homes in immediate area were built on small lots and enjoyed similar setbacks). The trial court concluded that this part of the test was met and we agree. See id.

The second part of the test, that the zoning regulation cause unusual hardship to the land unnecessary to carrying out the zoning plan, is generally more difficult to satisfy, but remains an absolute necessary as a condition precedent to the granting of a zoning variance. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 9:3, pp. 240–42. The applicant has the burden of proving hardship and "must establish both the existence of a sufficient hardship and that the claimed hardship is . . . unique . . . ." (Internal quotation marks omitted.) *Verrillo* v. *Zoning Board of Appeals*, supra, 155 Conn. App. 682. The claimed hardship must originate in the zoning ordinance; *Pollard* v. *Zoning Board of Appeals*, 186 Conn. 32, 39, 438 A.2d 1186 (1982); meaning that "because of some peculiar characteristic of [the] property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 207. In other words, a legal hardship must "[relate] to the property for which the variance is sought and not to the personal

hardship of the owners thereof." *Garibaldi* v. *Zoning Board of Appeals*, supra, 163 Conn. 238. Thus, a property owner's "[d]isappointment in the use of property does not constitute exceptional difficulty or unusual hardship"; *Krejpcio* v. *Zoning Board of Appeals*, 152 Conn. 657, 662, 211 A.2d 687 (1965); and principles of equity, fairness to the applicant, and lack of adverse consequences to surrounding properties do not meet the test for a legally recognized hardship. 9 R. Fuller, supra, § 9.1, pp. 237–38. Finally, the hardship "must be different in kind from that generally affecting property in the same zoning district . . . ." *Smith* v. *Zoning Board of Appeals*, supra, 174 Conn. 327. As a result, "[t]he existence of similar lots . . . make[s] it difficult or impossible to prove unusual or unique hardship." 9 R. Fuller, supra, § 9.2, p. 240.

IV

We now address the claimed hardship. The city's regulations require a fifteen foot setback between Fischer's dwelling and the property line. See West Haven Zoning Regs., § 11, Table 11.1. The regulations also limit the lot coverage to 35 percent and building coverage to 20 percent. Id. Fischer requested, and the board granted, a variance from these requirements. The claim of hardship advanced by Fischer, which the board found and the Superior Court affirmed, is that the property's hardship arose from his inability to construct the additions he desired owing to the size and shape of the property. By contrast, the plaintiffs claim that the hardship identified by Fischer is personal in nature and amounts to disappointment rather than legal hardship. We agree with the plaintiffs and hold that Fischer has not established a legally recognized hardship.

We first note the significance that Fischer's zoning application sought to expand—and perpetuate—an existing nonconforming structure, despite the general rule that "a nonconforming structure cannot be increased in size in violation of zoning ordinances . . . ." *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 243, 662 A.2d 1179 (1995). Although a nonconforming property owner may "continue the same use of the property as it existed before the date of the adoption of the zoning regulations"; *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981); "it is the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate"; (internal quotation marks omitted) id.; and "[i]n no case should [a nonconformance] be allowed to increase." (Internal quotation marks omitted.) *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 710, 535 A.2d 799 (1988). With that goal in mind, "[t]here exists a crucial distinction between maintaining an existing nonconforming structure and improving, or modernizing, it." *Verrillo* v. *Zoning Board of Appeals*, supra, 155 Conn. App. 693 n.23. "Zoning regulations that

deal with legal nonconforming uses of land or buildings balance two competing interests, the protection of individual property rights and the protection of the community's interest in a speedy elimination of the particular nonconformity. . . . The landowner has an interest in making reasonable renovations to prevent deterioration, but the community has an interest in not extending the life of the nonconformity so that the nonconformity gradually will be eliminated. . . . If a property owner is allowed to make drastic changes in a building, that interest would be favored over the interest of the community." (Citations omitted.) *Munroe* v. *Zoning Board of Appeals*, 75 Conn. App. 796, 810, 818 A.2d 72 (2003).

The express intent of the West Haven zoning regulations is to "regulate the use of property in lots having minimum sizes, dimensions and characteristics. It is also the intent of these Regulations that the structures located on said lots shall similarly comply with certain dimensional requirements." West Haven Zoning Regs., § 82.1. Accordingly, the regulations provide that "no enlargement of conversion may be made which would either create a new noncompliance or increase the degree of noncompliance of the building or other structure or any portion thereof. An enlargement is defined as creating additional units, rooms, or a greater degree of lot coverage." (Emphasis omitted.) Id., § 82.2.3. Further, the regulations set forth four requirements; see footnote 5 of this opinion; that, if met, could remove a residential construction project from classification as "an increase in the degree of noncompliance." West Haven Zoning Regs., § 82.3.1. A residential construction project's "[f]ailure to meet each section of [the] requirements shall be considered to be an increase in the noncompliance and therefore shall not be permitted." (Emphasis omitted.) Id. Those regulations therefore reflect the principle of zoning that nonconforming structures not be allowed to increase.

Here, the property is nonconforming in four respects and the prior owner of the property previously received a variance from the front yard setback requirement on the waterside of the property—one of the very variances Fischer now seeks—which was not contested or appealed. See footnote 3 of this opinion. Nonetheless, Fischer's present application seeks six variances, each of which would further increase the property's degree of nonconformity and one that would increase the property's degree of nonconformity in the very area where the property already enjoys a variance. See *Munroe* v. *Zoning Board of Appeals*, supra, 75 Conn. App. 810–11 (holding addition to nonconforming structure, even if constructed within existing footprint, was "a substantial increase in the nonconformity"). With this backdrop in mind, we turn to the controlling issue: whether substantial evidence supports the board's finding that Fischer demonstrated a legally recognized hardship resulting from his inability under the regulations to

expand his nonconforming structure.

In his application for a variance, Fischer alleged that exceptional hardship existed because "[t]he lot size limit[ed] the full enjoyment of th[e] property . . . ." Specifically, the setback and coverage requirements precluded Fischer from erecting the "additional dwelling space" in accordance with his desired construction plans. Additionally, Enright described the proposed expansion as reflecting not only Fischer's personal preference, but that of his neighbors as well, noting that Fischer acquiesced to a reduction in the size of the expansion at his neighbors' behest. He also acknowledged that although Fischer could construct a detached garage without violating the regulations, it was Fischer's personal preference to construct a nonconforming attached garage on the grounds that the nonconforming option was more reasonable based on esthetics and practicality.

Accordingly, Fischer is at pains to characterize his alleged hardship as anything other than personal preference disappointed by the regulations. Our case law precludes the granting of a variance based upon a property owner's personal preference for constructing an addition that is frustrated by zoning regulations. See *Berkman* v. *Board of Appeals*, 135 Conn. 393, 399–400, 64 A.2d 875 (1949) ("disappointment in the use of property can hardly constitute practical difficulty or unnecessary hardship within the meaning of a zoning law or regulation"). This principle is founded in the requirement that "a variance is not a personal exemption from the enforcement of zoning regulations. It is a legal status granted to a certain parcel of realty without regard to ownership." *Garibaldi* v. *Zoning Board of Appeals*, supra, 163 Conn. 239. Thus, the hardship necessary for the granting of a zoning variance must be unrelated to the desire of any particular property owner. *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 382, 311 A.2d 77 (1972). So, "the fact that an owner is prohibited from adding new structures to the property does not constitute a legally cognizable hardship." *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 210–11 n.13. Therefore, Fischer's inability to more than double the existing size of his already nonconforming dwelling for spatial and aesthetic reasons is not a hardship. A property owner's desire to build a larger home does not run with the land and is more appropriately characterized as personal disappointment, which does not rise to the legally recognized hardship necessary for a variance. *Michler* v. *Planning & Zoning Board of Appeals*, 123 Conn. App. 182, 187, 1 A.3d 1116 (2010) (concluding "the inability to build a larger structure" to be personal hardship). The record, therefore, does not support the conclusion by the board that Fischer had established the legal hardship required for the granting of a variance.

The personal nature of Fischer's alleged hardship undermines his reliance on *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 537 A.2d 1030 (1998); *Fiorilla* v. *Zoning Board of Appeals*, 144 Conn. 275, 129 A.2d 619 (1957); *Giarrantano* v. *Zoning Board of Appeals*, 60 Conn. App. 446, 760 A.2d 132 (2000); and *Stillman* v. *Zoning Board of Appeals*, 25 Conn. App. 631, 596 A.2d 1, cert. denied, 220 Conn. 923, 598 A.2d 365 (1991).

First, in *Grillo* v. *Zoning Board of Appeals*, supra, 206 Conn. 371, our Supreme Court rejected a claim of hardship premised on a property owner's inability to construct the building he desired to maximize the financial value of the property. In reversing the Superior Court's conclusion that hardship existed, the Supreme Court noted that the undeveloped property already was being used by the property owner, even though the current use significantly reduced the property's value. Id., 370 ("[a] zoning regulation that prevents land from being used for its greatest economic potential, however, d[id] not create the exceptional kind of financial hardship that we have deemed to have a 'confiscatory or arbitrary' effect"). Because of Fischer's desire to expand his dwelling, it follows that he does not suffer from legal hardship, but instead complains of personal disappointment.

Likewise, *Fiorilla* v. *Zoning Board of Appeals*, supra, 144 Conn. 275, does not support the assertion in Fischer's brief that "[o]ur courts have upheld approvals of variances premised on unique lot shapes, including the narrowness of the lot in many instances." Instead of preventing a property owner's preferred expansion project, the hardship in *Fiorilla* was use specific.[7] *Fiorilla* v. *Zoning Board of Appeals*, supra, 279–80. More importantly, in upholding the variance in *Fiorilla*, the court relied on the unique Norwalk zoning regulations, which the court observed "not only include[d] the customary authority to vary the regulations but extend[ed] to nonconforming uses a greater liberality than has previously come to our attention." Id., 281. For example, the court noted that "under § 17 [of the regulations] the owner may obtain special exceptions from the board to extend the area of nonconformity." Id. As a result, *Fiorilla* does not support Fischer's claim that the legal hardship results from his inability to increase his dwelling size by constructing his preferred expansion project.

By the same token, in *Giarrantano* v. *Zoning Board of Appeals*, supra, 60 Conn. App. 454, this court considered whether regulations deprived an owner of commercially zoned property of the ability to reasonably use his land for its approved purpose. In *Giarrantano*, the property was located in a commercially zoned area, but was occupied by a nonconforming residence. Id., 447–48. The hardship in *Giarrantano* was that the size and shape of the property deprived the owner of reason-

able commercial use of his property, notwithstanding the fact that an alternative residential use was available. Id. Accordingly, this court concluded that "although [the property owner] conceivably may have the right to use the land for residential purposes based on an existing nonconforming use, he does have the right under the [regulations] to use it for commercial purposes." Id., 454. In other words, the argument in *Giarrantano* was that if the setback regulations were applied, the useable land was too small to support the reasonable permitted use of the property. The case is thus distinguishable. In the present case, Fischer does not seek a variance to put a nonconforming property to a conforming use, but desires to attach additional nonconforming structures to his already nonconforming dwelling. Fischer's claim that his expansion is "reasonable" does not include an argument that without the variances the property could not be reasonably used for its permitted purpose, as the property is already put to residential use. Instead, Fischer characterizes his expansion plans as more reasonable than alternative construction plans, some of which do not run afoul of the regulations. The precise construction plan that Fischer desires, reasonable or not, is not permitted by the regulations. Thus, what Fischer claims is legal hardship is more properly characterized as personal disappointment.

Finally, *Stillman* v. *Zoning Board of Appeals*, supra, 25 Conn. App. 636–37, is inapplicable to Fischer's circumstances because the particular improvements in *Stillman* could be constructed only on one section of that property, due to the location of a well and a septic tank. Dissimilarly, Fischer's proposed additions reflect personal preference, not hardship, and could be achieved through alternative construction plans that comply with the regulations. Indeed, the mere fact that a conforming structure could be built without the need for a setback variance transforms an alleged hardship into personal disappointment.[8] See *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 547–49, 684 A.2d 735 (1996); see also id., 548 ("a hardship was not shown because the plaintiffs admitted that a house, even though not the type that they desired, could have been built on the lot while conforming to the setback requirements").

For all of the foregoing reasons, we conclude that Fischer failed to demonstrate a legally cognizable hardship, and therefore, the board acted improperly in granting the variances. Accordingly, the Superior Court improperly dismissed the plaintiffs' appeals.

The judgments are reversed and the case is remanded with direction to sustain the plaintiffs' appeals.

In this opinion the other judges concurred.

[1] These related cases were scheduled for oral argument before this court on the same day and before the same panel. Although the plaintiffs in both

cases filed separate appeals from the decision of the Superior Court, both appeals have nearly identical records and involve the same counsel, variance application, and property. As a result, we will address both appeals simultaneously.

[2] In both cases, Robert F. Fischer was added as an additional defendant after the Superior Court granted the plaintiffs' motions to add him as an additional party.

[3] In 1992, the property's prior owner received a variance that allowed the deck and dwelling to be constructed in violation of then existing front yard setback requirements. As a result, the deck and dwelling are legally existing nonconforming structures. See General Statutes § 8-2 (c) (2).

[4] Specifically, Fischer sought: (1) a side yard setback variance on the street side of the property to build a 27.25 foot by 30 foot addition onto the dwelling 10 feet from the property lines where 15 feet is required; (2) a side yard setback variance on the street side of the property to attach an approximately 40 foot by 22 foot three car garage onto the expanded dwelling, 5 feet from the property line where 15 feet is required; (3) a side yard setback variance on the water side of the property, to enclose an approximately 7 foot by 30 foot portion of the deck, 10 feet from the property line where 15 feet is required; (4) a side yard setback variance on the water side of the property to build an approximately 6 foot by 30 foot second floor deck, over the enclosed portion of the original deck, 10 feet from the property line where 15 feet is required; (5) a lot coverage variance to increase the permitted lot coverage to 48 percent where 35 percent is allowed; and (6) a building coverage variance to permit 38 percent of the lot to be covered by buildings where 20 percent is allowed.

[5] Section 82.3.1 of the West Haven zoning regulations provides in relevant part: "For the purposes of this section, it shall not be considered an increase in the degree of noncompliance if construction is requested, herein above, within the required setbacks or yards, provided that each of the following is met:

"1. New construction is no closer to the property line than the existing building line;

"2. The existing yard is at least 50 [percent] of the required setback;

"3. Length of that part of the building which is within the yard is less than 30 [percent] of the length of the adjacent boundary line; [and]

"4. In the case where an addition is requested that would increase the height of a structure that is within a required yard setback, the height may only be increased in proportion of one foot in height to every foot in distance between the requested expansion and the existing structure on the adjacent lot or its required yard, whichever is closer.

"Failure to meet each of these requirements shall be considered an increase in the noncompliance and therefore shall not be permitted." (Emphasis omitted.)

[6] General Statutes § 8-6 (a) (3) empowers the zoning board of appeals "to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."

[7] The property in *Fiorilla* v. *Zoning Board of Appeals*, supra, 144 Conn. 280, located in a residentially zoned area, was determined to be "ill adapted to residential use" because it "lacked sufficient frontage on a highway to afford an acceptable access to the interior land."

[8] In *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 211 n.13, our Supreme Court cautioned that "[a]lthough we distinguish *Stillman* from this case, we do not necessarily endorse its holding." In fact, "[i]n the nearly quarter-century since *Stillman* was decided, the Supreme Court not once has relied on that precedent in any manner, and the Supreme Court has since stated that the inability to add new structures to the property does not constitute a legally cognizable hardship . . . that personal inconvenience . . . does not rise to the level of hardship necessary for the approval of a variance . . . and that an applicant cannot demonstrate unusual hardship when it failed to prove that it could not continue to use the property

as it had been used for many years . . . . In light of the great weight of authority of our Supreme Court, and *Bloom*'s treatment of *Stillman* in particular, we thus view *Stillman* as best confined to its essential facts." (Citations omitted; internal quotation marks omitted.) *Verrillo* v. *Zoning Board of Appeals*, supra, 155 Conn. App. 712–13 n.38.

_____